***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on or about 22 October 1996.
3. Travelers Insurance Company is the carrier on the risk for workers' compensation purposes.
4. Plaintiff's average weekly wage on or about 22 October 1996 was $300.00. This yields a compensation rate of $200.01.
5. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
6. An employment relationship existed between plaintiff and defendant-employer on or about 1 June 1997.
7. Travelers Insurance Company is the carrier on the risk for workers' compensation purposes.
8. Plaintiff's average weekly wage on or about 22 October 1996 was $300.00. This yields a compensation rate of $200.01.
9. Plaintiff is making no claim for temporary partial disability compensation during the period of time that she worked for defendant-employer.
10. Plaintiff last worked for defendant-employer on 14 March 2000.
11. In addition to Dr. Mark E. Brenner's deposition testimony, the parties stipulated into evidence in this matter the following exhibits: (1) plaintiff's medical records; (2) plaintiff's answers to interrogatories; (3) employment information regarding plaintiff's employment with H R Block; (4) plaintiff's employment records from the United States Census Bureau; and (5) a labor market survey. In addition, defendants' exhibits one and two, which consist, respectively, of employment/personnel records from defendant-employer and defendants' medical records pertaining to plaintiff were admitted into evidence.
12. The issues to be determined are whether plaintiff has contracted a compensable occupational disease within the definition set forth in N.C. Gen. Stat. § 97-53(13); whether plaintiff sustained compensable injuries by accident to her right hand on 2 August 1996 and again on 30 May 1997 that aggravated a preexisting condition; to what, if any, medical and/or indemnity benefits is plaintiff entitled; whether plaintiff has been temporarily totally disabled within the meaning of the Act after 14 March 2000; and whether plaintiff unjustifiably refused suitable employment on or about 14 March 2000 pursuant to N.C. Gen. Stat. § 97-32.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner in the matter, plaintiff, who is right-hand dominant, was 40 years old. Plaintiff is a high school graduate who has taken community college courses and has held several certifications in the health and child care professions. All of these certifications had lapsed as of the date of the hearing before the Deputy Commissioner at which time plaintiff was not working in any capacity.
2. On 30 May 1996, plaintiff became employed by defendant-employer as a casing puller where plaintiff's primary job duty was to separate fat from the casing of hog intestines.
3. On 2 August 1996, while performing her duties as a casing puller, plaintiff struck her right hand on a pan. When she struck her right hand, plaintiff felt immediate pain in her right middle finger. However, plaintiff continued to work that day and for several days thereafter. Plaintiff first sought medical treatment from defendant-employer's medical department several days later due to an increase in swelling in her hand.
4. Plaintiff's right middle finger was wrapped, and when the swelling increased, she was placed on light duty work for a few days at a time. Despite her complaints, plaintiff continued to work for defendant-employer and did not suffer any loss of wages as a result.
5. On 22 October 1996, after a safety meeting at defendant-employer's plant, during which repetitive motion disorders were addressed, plaintiff reported that she had continued to experience pain, swelling, and burning in her right hand after the incident on 2 August 1996. Defendants thereupon completed a Form 19 indicating that plaintiff was alleging that the "repetitive motion of pulling guts has caused pain and swelling" in her right thumb.
6. After plaintiff's complaints of pain, swelling, and burning allegedly due to repetitive motion, plaintiff was placed in a light duty job assisting in defendant-employer's cafeteria and monitoring locker rooms and bathrooms.
7. Furthermore, due to her complaints, plaintiff was referred to Lumberton Orthopaedic and Sports Medicine where she first saw Dr. Rodney Fields on 7 November 1996. Examination and x-rays revealed no fractures of plaintiff's wrist or finger(s), decreased joint space of the middle finger, or bony abnormalities of the wrist. Plaintiff was diagnosed with right middle finger pain secondary to soft tissue trauma and right carpal tunnel syndrome. Dr. Fields placed plaintiff on light duty with no repetitive wrist motion and prescribed anti-inflammatory medication.
8. On 25 November 1996, plaintiff returned to Dr. Fields complaining that the pain was radiating up to her shoulder. Further, plaintiff reported a sensitivity to cold temperatures and water. Therefore, Dr. Fields ordered nerve conduction studies and an EMG, which were performed on 12 December 1996 and revealed normal results.
9. Plaintiff applied for and began a new position as second shift kill floor clerk on
 17 December 1996. This job was primarily secretarial in nature and plaintiff was required to answer the telephone, file, oversee employees' attendance and maintain disciplinary files of employees, make copies, and type. The work area in the office where plaintiff performed this job is climate controlled.
10. Plaintiff underwent cervical, thoracic, and lumbar spine MRIs on 22 April 1997. The lumbar spine MRI was normal; the thoracic spine MRI was essentially negative, with mild scoliosis and spondylosis; and the cervical spine MRI revealed a mild disc protrusion at C5-6. There is no other credible medical evidence of record to corroborate or indicate that plaintiff's mild disc protrusion at C5-6 has in any way contributed to her right hand complaints.
11. Plaintiff sought treatment on her own accord from Dr. Gwenesta Melton, who ordered a course of occupational therapy that was somewhat effective in alleviating plaintiff's complaints of pain.
12. On 30 May 1997, in the course of her employment, plaintiff slipped and fell, and landed on her right hand. Plaintiff sought treatment from the plant medical clinic, and continued working in the kill floor clerk job.
13. Plaintiff was first seen by Dr. Brenner on 30 July 1998 upon referral by her attorney. Dr. Brenner examined plaintiff, ordered x-rays and diagnosed plaintiff with post-traumatic proximal phalangeal joint synovitis of her right middle finger and nonspecific fibromyalgia. Dr. Brenner ordered a bone scan, the results of which were interpreted as essentially normal, with some subtle swelling.
14. In April 1999 plaintiff bid on and received a position as a receptionist in defendant-employer's human resources department. This job is in a climate-controlled environment, or, basically room temperature. As a receptionist in the human resources department, plaintiff was required to answer telephones, answer employees' questions, receive visitors to the department and perform a minimal amount of typing.
15. Plaintiff underwent a repeat nerve conduction study of the right upper extremity on 19 February 2000, which was normal. Repeat x-rays on 2 March 2000 of plaintiff's right hand and low back were also normal. Furthermore, on 2 March 2000, Dr. Brenner noted that a previous bone scan had been normal, as had been a previous MRI of plaintiff's low back. In addition, Dr. Brenner anticipated that a cervical MRI would not reveal any focal abnormalities. Dr. Brenner last saw plaintiff on this date, at which time he recommended further conservative treatment and indicated "appropriate work-related activities have been provided" at plaintiff's place of employment.
16. Plaintiff has no permanent work restrictions as a result of the incidents occurring at work on 2 August 1996 and 30 May 1997. Plaintiff was capable physically of performing the receptionist position in defendant-employer's human resources department. In addition, a labor market survey identified various positions that plaintiff was capable of obtaining and performing, given her physical abilities.
17. Despite Dr. Brenner's opinion that she was capable of continuing in her employment, plaintiff voluntarily terminated her employment with defendant-employer, and last worked there on 14 March 2000. On 27 December 1999 plaintiff had begun a job as a tax preparer with H R Block. Plaintiff continued this job until 17 April 2000. This job also was appropriate for her physical abilities.
18. Between 23 February 2000 and 20 August 2000, plaintiff was employed as an enumerator for the United States Department of Commerce as a census worker. This position also was appropriate for plaintiff's physical abilities.
19. Plaintiff testified that the clerk and receptionist positions at defendant-employer were not suitable, primarily because she was exposed to an environment that was too cold. This testimony is not credible in light of the other testimony in the case that the offices in question were climate-controlled and were room temperature, and given the lack of medical evidence to explain plaintiff's extreme sensitivity to cold temperatures. Plaintiff has not come forward with sufficient justification as to why she could not remain employed in the receptionist position for defendant-employer.
20. Plaintiff's medical condition for which she received medical treatment from 1996 through 2000 is causally related to a combination of the incident at work on 2 August 1996 when plaintiff hit her finger on a pan and the incident at work on 30 May 1997 when she slipped and fell onto her right hand.
21. As a result of the two incidents occurring at work on 2 August 1996 and again on 30 May 1997, plaintiff sustained a two percent permanent partial impairment to her right hand.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on 2 August 1996. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff sustained a second injury by accident arising out of and in the course of her employment with defendant-employer on 30 May 1997. N.C. Gen. Stat. § 97-2(6).
3. As a result of her compensable injuries by accident, plaintiff has retained a two percent permanent partial impairment to her right hand. N.C. Gen. Stat. § 97-31(12).
4. However, plaintiff has not met her burden of proving that she has ever been temporarily totally disabled as a result of her compensable injuries by accident, as at all times defendant-employer had available employment suitable for plaintiff's physical capacity. N.C. Gen. Stat. § 97-2(9). See also N.C. Gen. Stat. § 97-32.
5. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment arising from her compensable injuries by accident to the extent such treatment was or is reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability. N.C. Gen. Stat. §§97-2(19); 97-25 and 97-25.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall provide plaintiff with all reasonable and necessary medical treatment that was or is related to her compensable injuries, to the extent such medical treatment was reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1.
2. Subject to the attorney's fee approved below, defendants shall pay plaintiff four weeks of permanent partial disability benefits at the weekly rate of $200.01. This compensation has accrued and shall be paid in a lump sum.
3. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the amount awarded herein to plaintiff. Accordingly, defendants shall deduct one-fourth of the amount awarded to plaintiff in paragraph 2 above, and shall forward this amount directly to plaintiff's counsel of record.
4. Plaintiff is entitled to no indemnity compensation other than payment for her permanent partial impairment.
5. Defendants shall pay, if not already paid, an expert witness fee of $250.00 to Dr. Brenner for his deposition testimony in the matter.
6. Defendants shall bear the costs of this proceeding.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER